**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| ———————————————————— | ) | |
| BRAD S. FRANCIS, <u>et al.</u>, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil Action No. 19-949 (RBW) |
| | ) | |
| INTERNAL REVENUE SERVICE, | ) | |
| | ) | |
| Defendant. | ) | |
| ———————————————————— | ) | |
| BRAD S. FRANCIS, <u>et al.</u>, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil Action No. 19-3177 (RBW) |
| | ) | |
| UNITED STATES OF AMERICA, <u>et al.</u>,[1] | ) | |
| | ) | |
| Defendants. | ) | |
| ———————————————————— | ) | |

**<u>MEMORANDUM OPINION</u>**

The plaintiffs, Brad S. Francis and Christine C. Francis, proceeding <u>pro se</u>, initiated the above-captioned civil actions, <u>Francis v. Internal Revenue Service</u> (<u>Francis I</u>), Civ. Action No. 19-949, and <u>Francis v. United States</u> (<u>Francis II</u>), Civ. Action No. 19-3177, against the defendants, the United States of America; the Internal Revenue Service ("IRS"); Charles P. Rettig, in his official capacity as the Commissioner of the IRS; Michael R. Sherwin, in his official capacity as the Acting United States Attorney for the District of Columbia; and Sunita Lough, in her official capacity as the IRS Deputy Commissioner for Services and Enforcement (collectively, the "defendants"), pursuant to the Administrative Procedure Act ("APA"), 5 U.S.C.

---

[1] Michael R. Sherwin is substituted for Jessie K. Liu as to the proper party defendant pursuant to Federal Rule of Civil Procedure 25(d).

§§ 701–706 (2018); the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552; the Privacy Act, 5 U.S.C. § 552a; the Internal Revenue Code, 26 U.S.C. §§ 1–9834 (2018); and the Fifth and Fourteenth Amendments to the United States Constitution, U.S. Const. amends. V & XIV.  See First Amended Complaint for Injunctive Relief [ ], Francis I, Civ. Action No. 19-949 ("Francis I Compl." or the "Francis I Complaint") at 1, 26, ¶¶ 13, 16, 17; First Amended Complaint, Francis II, Civ. Action No. 19-3177 ("Francis II Compl." or the "Francis II Complaint") ¶¶ 3, 4, 7, 8, 16, 17, 21.  Currently pending before the Court are (1) the Defendants' Motion to Dismiss . . . the First Amended Complaint ("FAC"), Francis I, Civ. Action No. 19-949 ("Defs.' 1st Mot. to Dismiss" or the "first motion to dismiss"); (2) the plaintiffs' Motion for Sanctions Under Federal Rule of Civil Procedure 11, Francis I, Civ. Action No. 19-949 ("Pls.' Sanctions Mot." or the "motion for Rule 11 sanctions"); and (3) the Defendants' Motion to Dismiss Plaintiffs' First Amended Complaint ("FAC"), Francis II, Civ. Action No. 19-3177 ("Defs.' 2d Mot. to Dismiss" or the "second motion to dismiss").  Upon careful consideration of the parties' submissions,[2] the Court concludes for the following reasons that it must grant the defendants' first and second motions to dismiss and deny the plaintiffs' motion for Rule 11 sanctions.

---

[2] In addition to the filings already identified, the Court considered the following submissions in rendering its decision: (1) the Defendants' Memorandum in Support of Motion to Dismiss the First Amended Complaint ("FAC"), Francis I, Civ. Action No. 19-949 ("Defs.' 1st Mot. to Dismiss Mem."); (2) the Declaration of Joseph E. Hunsader in Support of Motion to Dismiss, Francis I, Civ. Action No. 19-949 ("Hunsader Decl."); (3) the Plaintiffs' Memorandum of Points and Authorities in Opposition to the Motion to Dismiss First Amended Complaint, Francis I, Civ. Action No. 19-949 ("Pls.' 1st Mot. to Dismiss Opp'n"); (4) the Declaration of Andrew Keaton, Francis I, Civ. Action No. 19-949 ("Keaton Decl." or the "Keaton declaration"); (5) the Defendants' Reply in Support of Motion to Dismiss the First Amended Complaint ("FAC"), Francis I, Civ. Action No. 19-949 ("Defs.' 1st Mot. to Dismiss Reply"); (6) the Memorandum of Points and Authorities in Support of the Motion for Sanctions Under Fed. R. Civ. P. 11, Francis I, Civ. Action No. 19-949 ("Pls.' Sanctions Mem."); (7) the Defendant's Opposition to Plaintiff's Motion for Sanctions Under Rule 11, Francis I, Civ. Action No. 19-949 ("Defs.' Sanctions Opp'n"); (8) the Reply to Defendant's Response (ECF 13) to Motion for Sanctions Under Federal Rule of Civil Procedure 11, Francis I, Civ. Action No. 19-949 ("Pls.' Sanctions Reply"); (9) the Defendants' Memorandum n Support of Motion to Dismiss Plaintiffs' First Amended Complaint ("FAC"), Francis II, Civ. Action No. 19-3177 ("Defs.' 2d Mot. to Dismiss Mem."); (10) the Plaintiffs' (the Francis' Family) Memorandum of Points and Authorities in Opposition to the Motion to Dismiss the First Amended Complaint ("FAC"), Francis II, Civ. Action No. 19-3177 ("Pls.' 2d Mot. to Dismiss Opp'n"); and (11) the Defendants' Reply in Support of Motion to Dismiss Plaintiffs' First Amended Complaint ("FAC"), Francis II, Civ. Action No. 19-3177 ("Defs.' 2d Mot. to Dismiss Reply").

# I.     BACKGROUND

The plaintiffs have initiated a number of legal challenges related to their tax returns, both in this Court and in other courts.  Because the procedural history of these legal challenges is pertinent to the resolution of the motions now pending before this Court, and to provide proper context, the Court will first address the procedural history of the plaintiffs' legal challenges.  The Court will then specifically address the factual background relevant to the plaintiffs' legal challenges in the above-captioned cases.

## A.     Procedural History

The plaintiffs are no strangers to the federal court system.  In 2016, they initiated a civil action in the United States District Court for the Western District of Missouri (the "Western District of Missouri"), challenging certain IRS actions related to their 2010 to 2015 tax returns. See Francis v. United States, No. 4:16-cv-0672-DGK, 2017 WL 1745605, at *1 (W.D. Mo. May 4, 2017), aff'd, 709 F. App'x 403 (8th Cir. 2018) (per curiam).  The Western District of Missouri concluded that it lacked subject matter jurisdiction over the plaintiffs' claims and dismissed the case.  See id. at *4.  Thereafter, in 2018, the plaintiffs initiated another civil action in the Western District of Missouri, again challenging certain IRS activities related to their 2010 to 2015 tax returns, and the Western District of Missouri again concluded that it lacked subject matter jurisdiction over the plaintiffs' claims and dismissed the case.  See Francis v. United States, No. 4:18-cv-0287-DGK, 2018 WL 4518973, at *1, 3 (W.D. Mo. July 23, 2018), aff'd, 770 F. App'x 314 (8th Cir. 2019) (per curiam).  Both dismissals were affirmed by the Eighth Circuit.  See Francis, 709 F. App'x at 403; Francis, 770 App'x at 314.

Then, in 2018, the plaintiffs initiated yet a third civil action, this time in this Court, again challenging certain IRS actions related to their 2010 to 2016 tax returns.  See Order at 2 (Apr.

12, 2019), <u>Francis v. Internal Revenue Serv.</u>, Civ. Action No. 18-823, ECF No. 14.  On March

31, 2019, this Court issued a non-final Order,[3] dismissing the majority of the plaintiffs' claims,

but allowing the plaintiffs' FOIA improper policy or practice claim to proceed, <u>see</u> Order at 1–2

(Mar. 31, 2019), <u>Francis</u>, Civ. Action No. 18-823, ECF No. 12.  The following day, the plaintiffs

initiated <u>Francis I</u>, <u>see</u> Complaint for Injunctive Relief at 1 (filed Apr. 1, 2019), <u>Francis I</u>, Civ.

Action No. 19-949, challenging certain IRS activities related to their 2014 to 2017 tax returns

and their 2010 to 2017 TXMODA transcripts, <u>see generally</u> <u>Francis I</u> Compl.  The defendants

then filed their first motion to dismiss, <u>see</u> Defs.' 1st Mot. to Dismiss at 1, and the plaintiffs filed

their motion for Rule 11 sanctions, <u>see</u> Pls.' Sanctions Mot. at 1.  While those motions were

pending resolution in <u>Francis I</u>, the plaintiffs initiated <u>Francis II</u>, <u>see</u> Complaint at 1, <u>Francis II</u>,

Civ. Action No. 19-3177 (filed Oct. 22, 2019), challenging certain IRS activities related to their

2010 to 2017 tax returns, <u>see</u> <u>Francis II</u> Compl. at 1, and the defendants filed their second motion

to dismiss in <u>Francis II</u>, <u>see</u> Defs.' 2d Mot. to Dismiss at 1.  The Court thereafter consolidated

<u>Francis I</u> and <u>Francis II</u>.  <u>See</u> Order at 2–3 (Apr. 27, 2020), <u>Francis I</u>, Civ. Action No. 19-949,

ECF No. 15.  The defendants' first and second motions to dismiss and the plaintiffs' motion for

Rule 11 sanctions are the subjects of this Memorandum Opinion.

## B.    Factual Background

In the <u>Francis I</u> and <u>Francis II</u> Complaints, the plaintiffs advance several legal challenges

relating to the IRS's treatment of their 2014 to 2017 tax returns and their requests to receive the

2010 to 2017 TXMODA transcripts.  <u>See generally</u> <u>Francis I</u> Compl.; <u>Francis II</u> Compl.  The

Court will separately address each set of challenged IRS actions.

---

[3] The Court subsequently issued a final Order in that case setting forth the reasons for the Court's conclusions in its March 31, 2019 non-final Order.  <u>See generally</u> Order (Apr. 12, 2019), <u>Francis</u>, Civ. Action No. 18-823, ECF No. 14.

### 1.      The Tax Returns

The plaintiffs submitted tax returns to the IRS for the 2014 to 2017 tax years.  Upon

review of these tax returns, the IRS determined that the plaintiffs had asserted frivolous positions

and penalties were assessed against the plaintiffs for those alleged transgressions.  See Francis II

Compl. ¶¶ 48–57; see also Pls.' Sanctions Mot., Exhibit ("Ex.") B10 (Letter from Christine L.

Davis, Program Manager, RICS, IVO, to Brad S. & Christine C. Francis (Apr. 3, 2018) ("2014

Notice")) at 1 (stating that the plaintiffs' 2014 tax return "claimed one or more frivolous

positions"); id., Ex. C2 (Notice of Penalty Charge ("2015 Notice")) at 2 (as to the plaintiffs'

2015 tax return, "charg[ing] [the plaintiffs] a penalty under [Internal Revenue Code] [§] 6702(a)

for filing a frivolous tax return"); id., Ex. D1 (Letter from Christine L. Davis, Program Manager,

RICS/IVO to Brad S. & Christine C. Francis (May 25, 2017) ("2016 Notice")) at 1 (stating that

the plaintiffs' 2016 tax return "claim[ed] one or more frivolous positions"); id., Ex. E1 (Letter

from Christine L. Davis, Program Manager, RICS/IVO to Brad S. & Christine C. Francis (Apr.

6, 2018) ("2017 Notice")) at 1 (stating that the plaintiffs' 2017 tax return "claimed one or more

frivolous positions").  The plaintiffs contend that "the[ir] tax returns were archived in a Federal

Records Center shortly after receipt by the IRS and before they could be included in the

Customer Account Data Engine . . . Individual Master Files[,]" Francis I Compl. ¶ 41 (emphasis

removed), and therefore "were [ ] not used in making any determination about the [plaintiffs']

tax liabilities[,]" id. ¶ 46.

On December 6, 2018, the plaintiffs mailed an IRS "Form 4506 . . . to the [IRS] [Return

Income Verification Services ('RAIVS')]" unit in Kansas City, Missouri (the "Kansas City

RAIVS unit"), id. ¶ 28, requesting "certified copies of the original tax returns ([ ] Form[s] 1040)

that the IRS received from the [plaintiffs][,] including attachments such as [F]orms 4852,

W-2[s], affidavits, etc.[,]" id. ¶ 27, for the 2014 to 2017 tax years, see id. ¶ 26. "On February
[]6, 2019, the . . . [Kansas City] RAIVS[] [unit] denied [the] [p]laintiffs['] request[.]" Id. ¶ 32.
In response, on February 18, 2019, the plaintiffs sent an appeal to the "IRS Appeals" office in
Riverside, California (the "Riverside IRS Appeals office"). Id. ¶ 35. "No determination was
mailed [to the plaintiffs] within the [twenty]-day time period as provided by 26 C.F.R.
§ 601.702(c)(1)(iii)[.]" Id. ¶ 39. However, on July 16, 2019, the IRS released to the plaintiffs
copies of their "2014 to 2017 Form 1040 federal income tax returns" "as a matter of
administrative discretion[.]" Defs.' 1st Mot. to Dismiss, Ex. 1 (Letter from Joseph E. Hunsader,
Trial Attorney, U.S. Dep't of Justice, Tax Division, to Brad & Christine Francis (July 16, 2019)
("Hunsader Ltr.")).

### 2.   The TXMODA Transcripts

#### a.   The 2010 to 2016 Tax Periods

"On July 11, 2017, [the] [p]laintiffs called (800) 908-9946 . . . [,] requesting copies of
copies of the [the] TXMODA A series of [t]ranscripts" for the 2010 to 2016 tax periods, Francis
I Compl. ¶ 73; see Francis II Compl. ¶ 28, and "[o]n July 19, 2017, [they] confirmed [their]
request . . . in writing[,]" Francis I Compl. ¶ 74. However, the IRS employee with whom they
spoke did not provide them with the requested TXMODA transcripts. See id. ¶ 76; see Francis II
Compl. ¶ 29. Then, "[o]n November 8, 2017, [one of the plaintiffs] [again] c[alled] (800) 908-
9946 . . . [,] request[ing] [their] TXMODA series transcripts" for the 2013 to 2016 tax periods.
Francis I Compl. ¶ 77; see Francis II Compl. ¶ 28. The IRS employee with whom the plaintiff
spoke "refused to help [the plaintiff] obtain [their] TXMODA series of transcripts." Francis I
Compl. ¶ 78 (footnote omitted); see Francis II Compl. ¶ 29.

Subsequently, on January 19, 2018, the plaintiffs mailed "two [IRS] Forms 4506-T" to the Kansas City RAIVS unit, requesting their TXMODA transcripts for the 2010 to 2016 tax periods. <u>Francis I</u> Compl. ¶ 80; <u>see id.</u> ¶¶ 81–82; <u>Francis II</u> Compl. ¶ 28. The "requests were rejected on the [ ] basis that lines 6 through 9 [of the forms] were not completed." <u>Francis I</u> Compl. ¶ 83; <u>see</u> <u>Francis II</u> Compl. ¶ 29. Thereafter, on December 1, 2018, the plaintiffs "sent an appeal to [the] IRS FOIA Appeals" office in Fresno, California (the "Fresno IRS Appeals office"), <u>Francis I</u> Compl. ¶ 86, and to the Riverside IRS Appeals office, <u>see id.</u> ¶ 92. The Riverside IRS Appeals office never responded, <u>see id.</u>, but on April 17, 2019, the Fresno IRS Appeals office "returned [the plaintiffs'] original appeal . . . under the guise [that] it was a FOIA request and [it] required [the plaintiffs] [to] submit a FOIA case number[,]" <u>id.</u> ¶ 67.

The IRS released the plaintiffs' TXMODA transcripts for the 2010 to 2016 tax periods to the plaintiffs on June 4, 2018 and April 22, 2019. <u>See id.</u> ¶¶ 94–95; <u>Francis II</u> Compl. ¶¶ 30, 62. "The [plaintiffs], after obtaining [their] TXMODA [transcript] for [the] 2016 [tax period], found that the administrative record was [allegedly] untimely, incomplete, and inaccurate." <u>Francis II</u> Compl. ¶ 31. On February 8, 2019, the plaintiffs sent a "request for amendment of [the administrative] record to . . . [the] Commissioner[] [of the] [Wage & Investment Division] . . . of the [IRS]" in Atlanta, Georgia, <u>id.</u> ¶ 33; <u>see id.</u> ¶ 32, but they "did not receive a written acknowledgement [ ] of their [r]equest for [a]mendment of [r]ecords[,]" <u>id.</u> ¶ 39 (emphasis removed). On April 12, 2019, the plaintiffs sent "an administrative appeal to the Director[] [of the] Office of Disclosure [of the] [IRS]" in the District of Columbia. <u>Id.</u> ¶ 44.

### b.      The 2017 Tax Period

On July 18, 2018, the plaintiffs mailed an "Form 4506-T request" to the Kansas City RAIVs unit, requesting their TXMODA transcript for the 2017 tax period. <u>Francis I</u> Compl.

¶ 56.  The Kansas City RAIVS unit "denied [the plaintiffs'] request . . . on July 16, 2018" on the ground that "lines 6 through 9 of the [F]orm 4506-T were incomplete."  Id. ¶ 57.  On July 28, 2018, the plaintiffs sent an "appeal to [ ] [the Riverside] IRS Appeals" office.  Id. ¶ 58.  The Riverside IRS Appeals office "rejected [the plaintiffs'] appeal" on that ground that "it was an improper FOIA request and needed to be directed to [ ] [the IRS's] FOIA [ ] office" in Atlanta, Georgia.  Id. ¶ 59.

On October 2, 2018, the plaintiffs faxed a "second [F]orm 4506-T request" to the Kansas City RAIVS unit, again requesting their TXMODA transcript for the 2017 tax period.  Id. ¶ 60.  The Kansas City RAIVS unit again "denied [the plaintiffs'] request . . . on October []5, 2018" on the ground that "lines 6 through 9 of [F]orm 4506-T were incomplete."  Id. ¶ 61.  On October 10, 2018, the plaintiffs sent an "appeal to [ ] [the Riverside] IRS Appeals" office, id. ¶ 62, but the plaintiffs did not "receiv[e] any response from the [Riverside] IRS Appeals office[,]" id. ¶ 63.

Then, on February 19, 2019, the plaintiffs mailed a "third Form 4506-T" request to the Kansas City RAIVs unit, again requesting their TXMODA transcript for the 2017 tax period.  See id. ¶¶ 64–65.  The Kansas City RAIVS unit again "denied [the plaintiffs'] request . . . on March 11, 2019" on the ground that "lines 6 through 9 of [F]orm 4506-T were incomplete."  Id. ¶ 65.  On March 18, 2019, the plaintiffs sent an "appeal to [ ] [the Riverside] IRS Appeals" office.  Id. ¶ 66.  However, on July 16, 2019, the IRS released the plaintiffs' "TXMODA transcripts for the 2017 tax year" to the plaintiffs "as a matter of administrative discretion[.]"  Defs.' 1st Mot. to Dismiss, Ex. 1 (Hunsader Ltr.) at 1.

## II.    STANDARDS OF REVIEW

### A.    Rule 12(b)(1) Motion to Dismiss

"Federal [district] courts are courts of limited jurisdiction[,]" Kokkonen v. Guardian Life

Ins. Co. of Am., 511 U.S. 375, 377 (1994), and "[a] motion for dismissal under [Federal Rule of

Civil Procedure] 12(b)(1) 'presents a threshold challenge to the [C]ourt's jurisdiction[,]'"

Morrow v. United States, 723 F. Supp. 2d 71, 75 (D.D.C. 2010) (Walton, J.) (quoting Haase v.

Sessions, 835 F.2d 902, 906 (D.C. Cir. 1987)).  Thus, the Court is obligated to dismiss a claim if

it "lack[s] . . . subject-matter jurisdiction."  Fed. R. Civ. P. 12(b)(1).  Because "[i]t is to be

presumed that a cause lies outside [the Court's] limited jurisdiction," Kokkonen, 511 U.S. at 377,

the plaintiff bears the burden of establishing by a preponderance of the evidence that the Court

has subject-matter jurisdiction, see Lujan v. Defs. of Wildlife, 504 U.S. 555, 561 (1992).

"In deciding a [Rule] 12(b)(1) motion, the [C]ourt need not limit itself to the allegations

of the complaint."  Grand Lodge of the Fraternal Order of Police v. Ashcroft, 185 F. Supp. 2d 9,

14 (D.D.C. 2001).  Rather, the "[C]ourt may consider such materials outside the pleadings as it

deems appropriate to resolve the question [of] whether it has jurisdiction to hear the case."

Scolaro v. D.C. Bd. of Elections & Ethics, 104 F. Supp. 2d 18, 22 (D.D.C. 2000); see Jerome

Stevens Pharms., Inc. v. Food & Drug Admin., 402 F.3d 1249, 1253 (D.C. Cir. 2005).

Additionally, the Court must "assume the truth of all material factual allegations in the complaint

and 'construe the complaint liberally, granting [the] plaintiff the benefit of all inferences that can

be derived from the facts alleged[.]'"  Am. Nat'l Ins. Co. v. Fed. Deposit Ins. Corp., 642 F.3d

1137, 1139 (D.C. Cir. 2011) (quoting Thomas v. Principi, 394 F.3d 970, 972 (D.C. Cir. 2005)).

However, "the [p]laintiff's factual allegations in the complaint . . . will bear closer scrutiny in

resolving a [Rule] 12(b)(1) motion than in resolving a [Rule] 12(b)(6) motion for failure to state

a claim." <u>Grand Lodge</u>, 185 F. Supp. 2d at 13–14 (first and second alterations in original) (internal quotation marks omitted).

**B.      Rule 12(b)(6) Motion to Dismiss**

A complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief[.]"  Fed. R. Civ. P. 8(a)(2).  Thus, to survive a motion to dismiss under Rule 12(b)(6) for "failure to state a claim upon which relief may be granted[,]" Fed. R. Civ. P. 12(b)(6), the "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face[,]'" <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the [C]ourt to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Id.</u> (citing <u>Twombly</u>, 550 U.S. at 556); <u>see</u> <u>Kowal v. MCI Commc'ns Corp.</u>, 16 F.3d 1271, 1276 (D.C. Cir. 1994) (noting that the plaintiff is entitled to "the benefit of all inferences that can be derived from the facts alleged"). Although the Court must accept the facts pleaded as true, legal allegations devoid of factual support are not entitled to this presumption.  <u>See, e.g.</u>, <u>Kowal</u>, 16 F.3d at 1276.  Along with the allegations made within the four corners of the complaint, the Court may also consider "any documents either attached to or incorporated in the complaint and matters of which [it] may take judicial notice." <u>Equal Emp't Opportunity Comm'n v. St. Francis Xavier Parochial Sch.</u>, 117 F.3d 621, 624 (D.C. Cir. 1997).

**C.      Rule 11 Motion for Sanctions**

"Rule 11 sanctions may be imposed where a party files a pleading, motion[,] or other paper with the [C]ourt for an improper purpose, that is unwarranted by existing law, [ ] that is lacking in evidentiary support[,]" <u>Henok v. Chase Home Fin., LLC</u>, 926 F. Supp. 2d 100, 104

(D.D.C. 2013) (citing Fed. R. Civ. P. 11(b)(1)–(3)), or that is not "reasonably based on belief or

a lack of information[,]" Fed. R. Civ. P. 11(b)(4).  "Rule 11 sanctions are an extreme punishment

for filing pleadings that frustrate judicial proceedings."  Brown v. Fed. Bureau of Investigation,

873 F. Supp. 2d 388, 408 (D.D.C. 2012) (quoting Wasserman v. Rodacker, Civ. Action No. 06-

1005 (RWR), 2007 WL 2071649, at *7 (D.D.C. July 18, 2007)).  Although "'the [ ] [C]ourt is

accorded wide discretion' in determining whether sanctions are appropriate[,]" Gomez v.

Aragon, 705 F. Supp. 2d 21, 23, n.2 (D.D.C. 2010) (quoting Westmoreland v. CBS, Inc., 770

F.3d 1168, 1174 (D.C. Cir. 1985)), "[t]he test [for sanctions] under Rule 11 is an objective one:

that is, whether a reasonable inquiry would have revealed that there was no basis in law or fact

for the asserted claim[,]" Sharp v. Rosa Mexicano, D.C., LLC, 496 F. Supp. 2d 93, 100 (D.D.C.

2007) (second alteration in original) (quoting Reynolds v. U.S. Capitol Police Bd., 357 F. Supp.

2d 19, 25 n.2 (D.D.C. 2004)).

### III.    ANALYSIS

The Court will first address the defendants' first and second motions to dismiss and will

then address the plaintiffs' motion for Rule 11 sanctions.

### A.    The Defendants' First and Second Motions to Dismiss

In the Francis I and Francis II Complaints, the plaintiffs allege that the defendants

(1) failed to release to the plaintiffs' 2014 to 2017 tax returns (Count I of the Francis I

Complaint), see Francis I Compl. ¶¶ 51–54, and the plaintiffs' TXMODA transcript for 2017

(Count II of the Francis I Complaint), see id. ¶¶ 55–67, in violation of the FOIA and the Privacy

Act (collectively, the "failure to release claims"); (2) adopted an improper policy or practice of

withholding the plaintiffs' 2010 to 2016 TXMODA transcripts, in violation of the FOIA and the

Privacy Act (Count III of the Francis I Complaint), see id. ¶¶ 71–114 (the "improper policy or

11

practice claim"); (3) performed "[u]nauthorized collection activities as provided [in] 26 U.S.C. § 7433[,]" in violation of the Fifth and Fourteenth Amendments to the United States Constitution (Count IV of the Francis I Complaint), id. ¶ 116; see id. ¶¶ 115–69, and the Privacy Act (Count II of the Francis II Complaint), see Francis II Compl. ¶¶ 71–85 (collectively, the "§ 7433 claims"); (4) refused to amend the plaintiffs' tax returns, in violation of the Privacy Act (Count I of the Francis II Complaint), see id. ¶¶ 23–70 (the "Privacy Act claim"); and (5) exceeded their statutory authority under 26 U.S.C. § 7433 in promulgating 26 C.F.R. § 301.7433-1(b)(2) (Count V of the Francis I Complaint and Count III of the Francis II Complaint), see Francis I Compl. ¶¶ 170–78; Francis II Compl. ¶¶ 86–94, and improperly determined that the plaintiffs' 2010 to 2017 tax returns were frivolous (Count IV of the Francis II Complaint), see Francis II Compl. ¶¶ 95–108, in violation of the APA (collectively, the "APA claims").  The defendants move to dismiss the Francis I and Francis II Complaints in their entirety pursuant to Rule 12(b)(1) and Rule 12(b)(6).  See Defs.' 1st Mot. to Dismiss at 1; Defs.' 2d Mot. to Dismiss at 1.  The Court will separately address whether dismissal of each set of claims is appropriate.

### 1. The Failure to Release Claims

The defendants argue that the plaintiffs' failure to release claims "should be dismissed because they are moot, and [the] [p]laintiffs failed to properly plead any FOIA or Privacy Act claims."  Defs.' 1st Mot. to Dismiss Mem. at 2.  As to the plaintiffs' request for their 2014 to 2017 tax returns, the plaintiffs "admit that [the] [d]efendant[s] released copies of tax returns for those years," but argue that the releases "were not certified for court" and "contain[ed] redactions that removed substantive information."  Pls.' 1st Mot. to Dismiss Opp'n at 5.  As to the plaintiffs' request for their 2017 TXMODA transcript, they "admit [that the] [d]efendant[s] ha[ve] released [the] TXMODA [transcript] for 2017 and that claim is moot[.]"  Id. at 11 n.12.

"Under Article III of the Constitution[,] th[e] Court may only adjudicate actual ongoing controversies." Honig v. Doe, 484 U.S. 305, 317 (1988).  And, in a case seeking the release of agency records, "[o]nce the documents are released to the requesting party, there is no longer any case or controversy." Williams & Connolly v. Secs. & Exchange Comm'n, 662 F.3d 1240, 1243 (D.C. Cir. 2011).  Here, as to the plaintiffs' request for the 2014 to 2017 tax returns, the defendants have proffered a sworn declaration representing that (1) "at the instruction of the IRS, the [United States] [Department of Justice] provided [ ] certified copies [of the 2014 to 2017 tax returns] to [the] [p]laintiffs under cover letter dated August 26, 2019" "solely as a matter of administrative grace and discretion, and not pursuant to any legal obligation under the FOIA or the Privacy Act[,]" Keaton Decl. ¶ 26, and that (2) "[t]he IRS did not redact any page of the four [tax] returns before releasing them to [the] [p]laintiffs[,]" id. ¶ 16.  And, as to the plaintiffs' request for the 2017 TXMODA transcript, the plaintiffs "admit [that the] [d]efendant[s] ha[ve] released [the] TXMODA [transcript] for 2017[.]"[4] Pls.' 1st Mot. to Dismiss Opp'n at 11 n.12.  Accordingly, the Court concludes that the plaintiffs' failure to release claims are moot and will grant the defendants' first motion to dismiss, to the extent that it seeks dismissal of Counts I and II of the Francis I Complaint.

### 2.    The Improper Policy or Practice Claim

The defendants argue that the plaintiffs' improper policy or practice claim should be dismissed because the plaintiffs "do[] not plead even a single FOIA and/or Privacy Act violation, much less repeated violations that might qualify as an 'improper policy or practice' under either statute." Defs.' 1st Mot. to Dismiss Mem. at 8.  The plaintiffs respond that the "defendant[s] ha[ve] adopted an erroneous view of the law by insisting that . . . [the] Forms 4506 [submitted by

---

[4] As noted earlier, the 2010 to 2016 TXMODA transcripts have also been provided to the plaintiffs.  See Part I.B.2.a, supra.

the plaintiffs] do not comply with [the] [d]efendant[s'] FOIA/Privacy Act regulations." Pls.' 1st

Mot. to Dismiss Opp'n at 28.

"[T]he [District of Columbia] Circuit has recognized that, separate from claims seeking

relief for specific requests made under the FOIA, requesting parties may also assert a 'claim that

an agency policy or practice will impair the party's lawful access to information in the future.'"

Nat'l Sec. Counselors v. Cent. Intelligence Agency, 960 F. Supp. 2d 101, 132 (D.D.C. 2013)

(quoting Payne Enters., Inc. v. United States, 837 F.2d 486, 491 (D.C. Cir. 1988)).

> District courts have since refined the Payne doctrine. To state a policy-or-practice
> claim, a plaintiff must plausibly allege "that the agency has adopted, endorsed, or
> implemented some policy or practice that constitutes an ongoing 'failure to abide
> by the terms of the FOIA.'" That is to say, a plaintiff must plead (1) some policy
> or practice that (2) results in a repeated violation of [the] FOIA.

Am. Ctr. for Law & Justice v. U.S. Dep't of State, 249 F. Supp. 3d 275, 281–82 (D.D.C. 2017)

(citations omitted) (quoting Muttitt v. Dep't of State, 926 F. Supp. 2d 284, 293 (D.D.C. 2013)).

"An agency's duties under the FOIA are triggered by a properly framed request for

information[.]" Nat'l Sec. Counselors v. Cent. Intelligence Agency, 898 F. Supp. 2d 233, 254

(D.D.C. 2012); see 5 U.S.C. § 552(a)(3)(A) ("[E]ach agency, upon request for records which

(i) reasonably describes such records and (ii) is made in accordance with published rules stating

the time, place, fees (if any), and procedures to be followed, shall make the records promptly

available to any person." (emphasis added)).

As a preliminary matter, while the Circuit has recognized an improper policy or practice

cause of action under the FOIA, see Payne, 837 F.2d at 491, the Court, like the defendants, "is

unaware that such a purported 'Privacy Act improper policy [or] practice' claim has ever been

recognized by the federal [c]ourts[,]" Defs.' 1st Mot. to Dismiss Mem. at 8. However, even

assuming that such a cause of action may be pleaded under the Privacy Act, the plaintiffs'

improper policy or practice claim still fails because, as the defendants correctly argue, see Defs.'
1st Mot. to Dismiss Mem. at 12–13, despite numerous "effort[s,]" Francis I Comp. at 17, made
by the plaintiffs to obtain their 2010 to 2016 TXMODA transcripts, see id. ¶¶ 73–92, none of
these requests constituted "a properly framed request for information" under the FOIA or the
Privacy Act, Nat'l Sec. Counselors, 898 F. Supp. 2d at 254.  Specifically, "the telephone calls
[by the plaintiffs to IRS employees]" cannot qualify as [ ] proper[ly[ signed written request[s]
under the FOIA or the Privacy Act."  Defs.' 1st Mot. to Dismiss Mem. at 12; see 26 C.F.R.
§ 601.702(c)(4)(A) (stating that a FOIA request made to the IRS must "[b]e made in writing and
signed by the individual making the request"); 31 C.F.R. § 1.26(d)(1)(i) (stating that a Privacy
Act request made to the IRS must "[b]e made in writing and signed by the person making the
request").  Additionally, the plaintiffs' "two submitted IRS Forms 4506-T . . . do not qualify as
properly perfected FOIA or Privacy Act requests[,]" Defs.' 1st Mot. to Dismiss Mem. at 12,
because they "d[id] not state that [they] [were] made under the FOIA or the Privacy Act[.]"  Id.
at 13; see 26 C.F.R. § 601.702(c)(4)(B) (stating that a FOIA request made to the IRS must
"[s]tate that it is made pursuant to the [FOIA]"); 31 C.F.R. § 1.26(d)(1)(ii) (stating that a Privacy
Act request made to the IRS must "[s]tate that it is made pursuant to the Privacy Act, 5 U.S.C.
552a or these regulations, have marked 'Privacy Act Request' on the request and on the
envelope").  And finally, the "[a]dministrative [FOIA] [a]ppeals" submitted by the plaintiffs to
the Fresno IRS Appeals office did not "satisf[y] the requirements for a valid [initial] FOIA . . .
request" because they were not "addressed and mailed to the correct IRS FOIA[] [unit][,]" as
they were required to be, because they were not sent to "the IRS's centralized FOIA in-take
processing unit in Atlanta, Georgia."  Defs.' 1st Mot. to Dismiss Mem. at 13; see 26 C.F.R.
§ 601.702(c)(4)(C) (stating that a FOIA request made to the IRS must "[b]e addressed to and

mailed to the office of the IRS official who is responsible for the control of the records requested"); Freedom of Information Act (FOIA) Guidelines, <u>Internal Revenue Serv.</u>, https://www.irs.gov/privacy-disclosure/freedom-of-information-act-foia-guidelines (last visited June 12, 2020)[5] (stating that FOIA requests "[f]or business/taxpayer records" must be mailed to an address in Atlanta, Georgia).

Because the plaintiffs fail to allege that they submitted any "properly framed request for information" under the FOIA or the Privacy Act, the IRS's "duties under the FOIA [and the Privacy Act] [were] [never] triggered[,]" <u>Nat'l Sec. Counselors</u>, 898 F. Supp. 2d at 254, and the plaintiffs have failed to "plead [ ] some policy or practice that [ ] results in a repeated"—let alone a single—"violation of the FOIA" or the Privacy Act, <u>Am. Ctr. for Law & Justice</u>, 249 F. Supp. 3d at 282. Accordingly, the Court concludes that the plaintiffs have failed to plead an improper policy or practice claim under the FOIA or the Privacy Act and will grant the defendants' first motion to dismiss, to the extent that it seeks dismissal of Count III of the <u>Francis I</u> Complaint.

### 3.    The § 7433 Claims

The defendants argue that the plaintiffs' § 7433 claims should be dismissed because they are "barred by issue preclusion." Defs.' 1st Mot. to Dismiss Mem. at 16; <u>see</u> Defs.' 2d Mot. to Dismiss Mem. at 2. Specifically, the defendants argue that the plaintiffs' § 7433 claims are barred because

> the Western District of Missouri previously held in an earlier case brought by [the plaintiffs] that[] [the] [p]laintiffs' purported § 7433 claims must be dismissed for lack of subject matter jurisdiction because the statute allows lawsuits for damages from unauthorized <u>collections</u> only, not lawsuits such as [the] [p]laintiffs' challenging a tax <u>assessment</u>.

---

[5] "[C]ourts in this jurisdiction have frequently taken judicial notice of information posted on official public websites of government agencies." <u>United States ex rel. Groat v. Boston Heart Diagnostics Corp.</u>, 255 F. Supp. 3d 13, 24 n.7 (D.D.C. 2017) (Walton, J.) (quoting <u>Pharm. Research & Mfrs. of Am. v. U.S. Dep't of Health & Human Servs.</u>, 43 F. Supp. 3d 28, 33 (D.D.C. 2014)).

Id.  The plaintiffs respond that both of their § 7433 claims are not barred by issue preclusion because "(1) the issue[s] [are] not identical; [ ] (2) the prior decision was not actually litigated and (3) preclusion would work unfairness under the circumstances."  Pls.' 1st Mot. to Dismiss Opp'n at 32; see Pls.' 2d Mot. to Dismiss Mem. at 14.

The doctrine of "[i]ssue preclusion[] . . . bars 'successive litigation of an issue of fact or law [that was] actually litigated and resolved in a valid court determination essential to the prior judgment,' even if the issue recurs in the context of a different claim."  Taylor v. Sturgell, 553 U.S. 880, 892 (2008) (quoting New Hampshire v. Maine, 532 U.S. 742, 748–49 (2001)).  An issue is precluded if (1) "the same issue now being raised . . . [was] contested by the parties and submitted for judicial determination in the prior case[,]" (2) "the issue . . . [was] actually and necessarily determined by a court of competent jurisdiction in that prior case[,]" and (3) "preclusion in the second case . . . [does] not work a basic unfairness to the party bound by the first determination."  Martin v. U.S. Dep't of Justice, 488 F.3d 446, 454 (D.C. Cir. 2007) (quoting Yamaha Corp. of Am. v. United States, 961 F.2d 245, 254 (D.C. Cir. 1992)).  "In determining whether issue preclusion exists, [ ] [the] [C]ourt may take judicial notice of 'all relevant facts [that] are shown by the [C]ourt's own records,' as well as 'public records from other proceedings.'"  Budik v. Ashley, 36 F. Supp. 3d 132, 142 (D.D.C. 2014) (Walton, J.) (fourth alteration in original) (quoting Hemphill v. Kimberly-Clark Corp., 530 F. Supp. 2d 108, 111 (D.D.C. 2008)), aff'd sub nom. Budik v. United States, No. 14-5102, 2014 WL 6725743 (D.C. Cir. Nov. 12, 2014).  "Issue preclusion applies to dismissal for lack of jurisdiction as well as for other grounds."  Safadi v. Novak, 574 F. Supp. 2d 52, 55 (D.D.C. 2008); see GAF Corp. v. United States, 818 F.2d 901, 912 (D.C. Cir. 1987) ("The judgment ordering dismissal[] [ ] will

have preclusive effect as to the matters actually adjudicated; it will, for example, preclude

relitigation of the precise issue of jurisdiction that led to the initial dismissal.").

> A claim of jurisdiction is not precluded if, however, in the interim subsequent to
> the initial dismissal there are developments tending to cure the jurisdictional
> deficiency identified in the first suit.  This so-called curable defect exception
> applies where a precondition requisite to the court's proceeding with the original
> suit was not alleged or proven, and is supplied in the second suit.

GAF Corp., 818 F.2d at 912–13 (footnote omitted) (internal quotation marks omitted).  The

Court will address in turn whether each element of issue preclusion is satisfied in this case.

First, "the same issue now being raised"—whether the Court has subject matter

jurisdiction over the plaintiffs' § 7433 claims challenging tax assessments—must have been

"contested by the parties and submitted for judicial determination in the prior case[s]" before the

Western District of Missouri, Martin, 488 F.3d at 454, which it was, see Francis, 2017 WL

1745605, at *1; Francis, 2018 WL 4518973, at *1, 3.[6]  The plaintiffs attempt to argue that "the

issue is not identical[,]" Pls.' 1st Mot. to Dismiss Opp'n at 32 (capitalization removed), because

the plaintiffs' prior cases in the Western District of Missouri "did not adjudicate the issue of

subject matter jurisdiction over the [plaintiffs'] 2015 [and 2016] tax return[s][,]" id.; see Pls.' 2d

Mot. to Dismiss Opp'n at 16.  However, the plaintiffs confuse the separate doctrines of issue and

claim preclusion.

> Under claim preclusion, which was traditionally considered synonymous with the
> term res judicata, a final judgment forecloses successive litigation of the very same
> claim, whether or not relitigation of the claim raises the same issues as the earlier

---

[6] The Court rejects the plaintiffs' argument that they are challenging tax collection activities, rather than tax assessment activities.  See Pls.' 1st Mot. to Dismiss Opp'n at 30 (arguing that "the allegations in the [Francis I and Francis II] Complaint[s] allege collection activities").  Like the Western District of Missouri, this Court also concludes that "although [the] [p]laintiffs argue . . . [that the Francis I and Francis II Complaints] specifically make allegations regarding collection activities, a close reading of these allegations shows that they all rest on claims that [the] [IRS] erred in assessing their taxes and imposing liabilities."  Francis, 2017 WL 1745605, at *3; see Francis I Compl. ¶¶ 115–64 (alleging that the defendants' falsification of the administrative record and use of "unfair information practices" caused the defendants to improperly assess the plaintiffs' tax liability for the 2015 tax period (capitalization removed)); Francis II Compl. ¶¶ 71–85 (alleging that the defendants failed to meet their burden of proof in assessing the plaintiffs' tax liability for the 2016 tax period).

> suit.  By contrast, issue preclusion, which was traditionally considered distinct from the term <u>res judicata</u> and alternatively referred to as collateral estoppel, bars successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment, even if the issue recurs in the context of a <u>different claim</u>.

<u>Angelex Ltd. v. United States</u>, 123 F. Supp. 3d 66, 76 (D.D.C. 2015) (citation and internal quotation marks omitted).  Thus, although the plaintiffs' <u>claims</u> raised in the <u>Francis I</u> and <u>Francis II</u> Complaints differ from those raised in the plaintiffs' prior Western District of Missouri cases because they relate to different tax periods, the <u>issue</u> implicated by the plaintiffs' claims in the Western District of Missouri case and in the two cases now before this Court—whether a federal district court has subject matter jurisdiction over claims challenging tax assessment activities brought pursuant to § 7433—is the same.  Thus, the Court concludes that the first element of issue preclusion is satisfied.

Second, "the issue . . . [was] actually and necessarily determined by a court of competent jurisdiction in th[e] prior [Western District of Missouri] case[s]."  <u>Martin</u>, 488 F.3d at 454 (quoting <u>Yamaha</u>, 961 F.2d at 254).  The Western District of Missouri twice concluded that a federal district court does not have subject matter jurisdiction over claims challenging unauthorized tax assessment activities brought pursuant to § 7433.  <u>See</u> <u>Francis</u>, 2017 WL 1745605, at *3 (concluding that the "[p]laintiffs' purported § 7433 claims must be dismissed for lack of subject matter jurisdiction because the statute allows lawsuits for damages stemming from unauthorized tax <u>collections</u> only, not lawsuits such as [the] [p]laintiffs' challenging a tax <u>assessment</u>"); <u>Francis</u>, 2018 WL 4518973, at *2 (concluding that the plaintiffs' complaint "suffer[ed] from the same fatal defect as . . . [their previous civil action in the Western District of Missouri]: lack of subject matter jurisdiction" and that the plaintiffs were "precluded" from "re-litigating the issue of subject matter jurisdiction" under the doctrine of issue preclusion).

Finally, "preclusion in th[ese] [ ] case[s] . . . [does] not work a basic unfairness to the part[ies] bound by the [ ] determination[s]" of the Western District of Missouri.  Martin, 488 F.3d at 454 (quoting Yamaha, 961 F.2d at 254).  A basic unfairness exists if "the party to be bound lacked an incentive to litigate [the issue] in the first [cause of action], especially in comparison to the stakes of the second [cause of action]."  Otherson v. Dep't of Justice, Immigration & Naturalization Serv., 711 F.2d 267, 273 (D.C. Cir. 1983).  Here, "the plaintiff[s] made the same allegations" in their cases in the Western District of Missouri.  Therefore, they "had the incentive"—and in fact the opportunity—"to litigate this issue" in those cases.  Budik, 36 F. Supp. 3d at 142.  Accordingly, the Court concludes that the third element of issue preclusion is also satisfied.

Moreover, the "curable defect exception" does not apply because, since the dismissal of the plaintiffs' cases in the Western District of Missouri, there have been no "developments tending to cure the jurisdictional deficiency identified in the [ ] [prior] suit[s]."  GAF Corp., 818 F.2d at 913.  Accordingly, the Court concludes that the plaintiffs' § 7433 claims are barred by the doctrine of issue preclusion and will therefore grant the defendants' first motion to dismiss, to the extent that it seeks dismissal of Count IV of the Francis I Complaint, and the defendants' second motion to dismiss, to the extent that it seeks dismissal of Count II of the Francis II Complaint.

### 4.    The Privacy Act Claim

The defendants argue that the plaintiffs' Privacy Act claim should be dismissed because "Internal Revenue Code [§] 7852(e) strips federal subject matter jurisdiction for any Privacy Act claim seeking to amend/correct a taxpayer's administrative tax records."  Defs.' 2d Mot. to Dismiss Mem. at 5.  The plaintiffs respond that "an absolute bar of Privacy Act records keeping

20

requirements under [Internal Revenue Code] § 7852(e) would result in the absurd result of

sanctioning [the] [d]efendant[s'] weaponizing of the administrative record to facilitate

unauthorized collection activities through the intentional development of an untimely, inaccurate,

and incomplete administrative record."  Pls.' 2d Mot. to Dismiss Opp'n at 5–6.

      As a general matter, the Privacy Act "allows individuals . . . to request the amendment of

records 'they believe to be inaccurate, irrelevant, untimely, or incomplete[,]'" and "authorize[s]

civil actions to enforce the amendment and accuracy requirements."  <u>Adams v. U.S. Att'y's</u>

<u>Office</u>, Civ. Action No. 11-1395 (EGS), 2011 WL 3359555, at *1 (D.D.C. Aug. 3, 2011)

(quoting <u>Doe v. Fed. Bureau of Investigation</u>, 936 F.2d 1346, 1350 (D.C. Cir. 1991)).  However,

26 U.S.C. § 7852(e) separately provides that

> [t]he provisions of subsections (d)(2), (3), and (4), and (g) of section 552a of title
> 5, United States Code, shall not be applied, directly or indirectly, to the
> determination of the existence or possible existence of liability (or the amount
> therefore) of any person for any tax, penalty, interest, fine, forfeiture, or other
> imposition or offense to which the provisions of this title apply.

26 U.S.C. § 7852(e); <u>see</u> 5 U.S.C. § 552a(g) (authorizing civil actions for violations of the

Privacy Act).  Thus, "[t]he plain language of [§] 7852(e) states that the provision of the Privacy

Act providing that federal district courts with jurisdiction over civil actions to enforce the

Privacy Act 'shall not be applied' to the IRS."  <u>Maxwell v. Rubin</u>, 3 F. Supp. 2d 45, 48 (D.D.C.

1998).  Thus, "[i]n view of the plain language of the Internal Revenue Code, . . . 26 U.S.C.

§ 7852(e) strip[s] the [C]ourt of subject matter jurisdiction over [the plaintiffs'] Privacy Act

claim[] for . . . amendment of [their] tax records."  <u>Gardner v. United States</u>, 213 F.3d 735, 742

n.5 (D.C. Cir. 2000); <u>see</u> <u>England v. Comm'r of Internal Revenue</u>, 798 F.2d 350, 351–52 (9th

Cir. 1986) ("One of the subsections of the Privacy Act that cannot be applied to records falling

within 26 U.S.C. § 7852(e) is subsection (g), which confers upon the district courts jurisdiction

over the civil remedies provided by the Privacy Act.  The district, therefore, is without jurisdiction over a civil action by an individual who seeks to amend a record determining actual or possible tax liability.").  Accordingly, the Court concludes that it does not have subject matter jurisdiction over the plaintiffs' Privacy Act claim and must grant the defendants' second motion to dismiss, to the extent that it seeks dismissal of Count I of the <u>Francis II</u> Complaint.

      **5.**      **The APA Claims**

      The defendants also argue that the plaintiffs' APA claims should be dismissed. Specifically, as to the plaintiffs' APA claims challenging the IRS's statutory authority to promulgate 26 C.F.R. § 301.7433-1(b)(2) under § 7433, <u>see</u> <u>Francis I</u> Compl. ¶¶ 170–78; <u>Francis II</u> Compl. ¶¶ 86–94, the defendants argue that "[b]ecause [the] [p]laintiffs have not, and cannot, plead that they will be [§] 7433 prevailing plaintiffs, [the] [p]laintiffs cannot plead the injury-in-fact required for them to have standing to plead" these claims, Defs.' 1st Mot. to Dismiss Mem. at 27; <u>see</u> Defs.' 2d Mot. to Dismiss Mem. at 10.  The plaintiffs respond that because "all of the elements of [i]ssue [p]reclusion" have not been satisfied, the [plaintiffs] [ ] have standing to bring the[se] claim[s] before this Court." Pls.' 1st Mot. to Dismiss Opp'n at 47; <u>see</u> Pls.' 2d Mot. to Dismiss Opp'n at 17.  And, as to the plaintiffs' APA claim challenging the IRS's determination that the plaintiffs' 2010 to 2017 tax returns were frivolous, the defendants argue that the "[p]laintiffs [ ] do not identify the required specific waiver of sovereign immunity to bring suit" and "no specific legal claim is pleaded[.]"  Defs.' 2d Mot. to Dismiss Mem. at 11. The plaintiffs respond that that they "brought [this claim] asking the Court to specifically focus on [the] [d]efendants' actions . . . pursuant to the [APA][.]"  Pls.' 2d Mot. to Dismiss Opp'n at 17.

The Court will first address the plaintiffs' APA claims challenging the IRS's statutory authority under § 7433 to promulgate 26 C.F.R. § 301.7433-1(b)(2).  These APA claims seek both "direct economic damages [that] may be determined to have arisen from administrative actions[,]" Francis I Compl. ¶ 177, see Francis II Compl. ¶ 93, as well as "whatever other equitable and legal relief that the circumstances and justice may require[,]" Francis I Compl. ¶ 178; see Francis II Compl. ¶ 94.  Although the parties' arguments focus on whether the plaintiffs have standing to bring these claims, the more appropriate inquiry is whether the Court is authorized to hear these claims under the APA, and thus the Court will address that issue sua sponte.  See Woodyard v. Harper, 162 F. Supp. 3d 3, 6 (D.D.C. 2016) ("As courts of limited jurisdiction, federal courts must assure themselves of jurisdiction over any controversy they hear. For that reason, doubts about 'subject matter jurisdiction may be raised at any time, even by the [C]ourt sua sponte.'" (citation omitted) (quoting Jerez v. Republic of Cuba, 777 F. Supp. 2d 6, 15 (D.D.C. 2011)).

Here,

[i]t is clear that [the] plaintiffs' claims . . . are barred by well-settled case law.  To begin with, the law is well-established that the APA's waiver of sovereign immunity does not apply to suits for monetary damages.  [And], [t]o the extent [the] plaintiffs seek injunctive relief under the APA, the claims[s] fail[] based on the Anti-Injunction Act because an action brought under the APA is barred if it concerns the assessment or collection of federal taxes . . . . Their entire case is premised on alleged IRS tax collection activity in disregard of the Internal Revenue Code [and its supporting regulation].  To the extent they seek an order that would enjoin any part of that collection activity, or that would, through a mandatory injunction, require [the] defendant[s] to return money or pay damages to [the] plaintiffs, their APA claim[s] [are] barred.

Ross v. United States, 460 F. Supp. 2d 139, 149–50 (D.D.C. 2006) (citations and internal quotation marks omitted); see Foodservice & Lodging Inst., Inc. v. Regan, 809 F.2d 842, 844 (D.C. Cir. 1987) ("Because at least two of these [challenged IRS] regulations plainly concern the

assessment or collection of federal taxes, the appellant's challenges to them are barred by the

Anti-Injunction Act and the Declaratory Judgment Act.").  Therefore, the plaintiffs' attempt to

challenge the IRS's statutory authority to adopt 26 C.F.R. § 301.7433-1(b)(2) pursuant to the

APA must be rejected.

　　　The Court will next address the plaintiffs' APA claim challenging the IRS's

determination that their 2010 to 2017 tax returns were frivolous. See Francis II Compl.

¶¶ 95–108.  The plaintiffs argue that the APA authorizes them to bring this claim.  See Pls.' 2d

Mot. to Dismiss Opp'n at 17.  However, with respect to the IRS's determination that the

plaintiffs' 2010 to 2017 tax returns were frivolous, the plaintiffs "ha[ve] an adequate remedy in

court—namely, a suit to recover any improperly assessed penalty pursuant to 28 U.S.C.

§ 1346(a)(1) and/or 26 U.S.C. § 7422."  Eisenstein v. United States, No. 6:13-cv-1582-Orl-

28KRS, 2014 WL 9865336, at *9 (M.D. Fla. May 12, 2014) (concluding that "the assessment of

the frivolous return penalty, the assessment of the late return penalty, and the refusal to abate the

frivolous return penalty" could "potentially qualify as 'final'" agency action, but that the court

"d[id] not have the authority to review [the plaintiff's] claims under the APA because he ha[d] an

adequate alternative remedy in court"); see 28 U.S.C. § 1346(a)(1) (2018) (authorizing "civil

action[s] against the United States for the recovery of any internal-revenue . . . penalty claimed

to have been collected without authority"); 26 U.S.C. § 7422(a) (authorizing civil actions "for

the recovery of any internal revenue . . . penalty claimed to have been collected without

authority" after "a claim for refund or credit has been duly filed with the Secretary").  Although

　　　　[i]t is somewhat unclear whether the availability of an alternate remedy in court
　　　　compels a conclusion that an APA action is barred by sovereign immunity or
　　　　merely that it fails to state a claim upon which relief can be granted[,] . . . [t]he
　　　　Court need not resolve this ambiguity[] [ ] because under either rationale, the result
　　　　is the same: dismissal of the APA claim.

Eisenstein, 2014 WL 9865336, at *9 n.16 (citations omitted).  Therefore, because the plaintiffs "ha[ve] an adequate alternative remedy in court[,]" the Court concludes that "it does not have the authority to review [the plaintiffs'] claim under the APA[.]"  Id. at *9.

Accordingly, the Court concludes that it does not have authority to review the plaintiffs' APA claims and will therefore grant the defendants' first motion, to the extent that it seeks dismissal of Count V of the Francis I Complaint, and the defendants' second motion to dismiss, to the extent that it seeks dismissal of Counts III and IV of the Francis II Complaint.  And, because the Court has concluded that dismissal of all of the plaintiffs' claims in the Francis I and Francis II Complaints is required, the Court will grant the defendants' first and second motions to dismiss in their entirety.

## B.      The Plaintiffs' Motion for Rule 11 Sanctions

Finally, the Court will address the plaintiffs' motion for Rule 11 sanctions.  The plaintiffs argue that the Court should impose sanctions under Rule 11 because the "defendant[s] wrongly accuse[d] the plaintiffs] of filing frivolous [tax] returns" in the defendants' reply in support of their first motion to dismiss, as well as the Keaton declaration.  Pls.' Sanctions Mem. at 9 (capitalization removed).  The defendants respond that their "[r]eply [and the Keaton declaration] did not violate Rule 11 in any respect."  Defs.' Sanctions Opp'n at 2.

> Under Rule 11, sanctions may be imposed if a reasonable inquiry discloses the pleading, motion, or paper is (1) not well grounded in fact[;] (2) not warranted by existing law or a good faith argument for the extension, modified, or reversal of existing law[;] or (3) interposed for an improper purpose such as harassment or delay.

Westmoreland v. CBS, Inc., 770 F.2d 1168, 1174 (D.C. Cir. 1985).  Here, the Court agrees with the defendants that for several reasons "[t]here are no grounds for [the] [p]laintiffs' motion for Rule 11 sanctions."  Defs.' Sanctions Opp'n at 5.  First, the assertions in the defendants' reply

and the Keaton declaration that the IRS determined that some of the plaintiffs' tax returns were

frivolous are "well grounded in fact[.]" Westmoreland, 770 F.2d at 1174; see Pls.' Sanctions

Mot., Ex. B10 (2014 Notice) at 1 (stating that the plaintiffs' 2014 tax return "claimed one or

more frivolous positions"); id., Ex. C2 (2015 Notice) at 2 (as to the plaintiffs' 2015 tax return,

"charg[ing] [the plaintiffs] a penalty under [Internal Revenue Code] section 6702(a) for filing a

frivolous tax return"); id., Ex. D1 (2016 Notice) at 1 (stating that the plaintiffs' 2016 tax return

"claim[ed] one or more frivolous positions"); id., Ex. E1 (2017 Notice) at 1 (stating that the

plaintiffs' 2017 tax return "claimed one or more frivolous positions").  Moreover, the assertions

in the defendants' reply and the Keaton declaration that the IRS determined that some of the

plaintiffs' tax returns were frivolous because they "report[ed] $0.00 of wages, dividends, or other

income[,]" but still claimed that "the United States [ ] owe[d] [the] [p]laintiffs [ ] huge tax

refund[s]," Defs.' 1st Mot. to Dismiss Reply at 3 (internal quotation marks omitted), is

"warranted by existing law," Westmoreland, 770 F.2d at 1174; see 26 U.S.C. § 6702(c)

(authorizing the "Secretary [ ] [to] prescribe (and periodically revise) a list of positions which the

Secretary has identified as being frivolous"); Notice 2010-33, 2010-17 I.R.B. 609, Internal

Revenue Serv., https://www.irs.gov/irb/2010-17_IRB#NOT-2010-33 (listing as a "[f]rivolous

[p]osition" the position that "[a] taxpayer has an option to . . . elect to file a tax return reporting

zero taxable income and zero tax liability even if the taxpayer received taxable income during

the taxable period for which the return is filed").[7]  Finally, the assertions in the defendants' reply

and the Keaton declaration that the IRS determined that some of the plaintiffs' tax returns were

---

[7] Notice 2010-33 was in effect from 2014 to 2017, the years when the IRS determined that the plaintiffs filed
frivolous tax returns.  See Tax Guide 2014 for Individuals at 19–20, Internal Revenue Serv.,
https://www.irs.gov/pub/irs-prior/p17--2014.pdf (instructing that Notice 2010-33 provides "a list of positions that
are identified as frivolous" for the 2014 tax period); Tax Guide 2017 for Individuals at 19, Internal Revenue Serv.
(Dec. 12, 2017), https://www.irs.gov/pub/irs-prior/p17--2017.pdf (instructing that Notice 2010-33 provides "a list of
positions that are identified as frivolous" for the 2017 tax period).

frivolous were not "interposed for an improper purpose such as harassment or delay[,]"

Westmoreland, 770 F.2d at 1174, but rather, were offered to respond to the plaintiffs' FOIA

improper policy or practice claim raised in Count III of the Francis I Complaint, see Defs.' 1st

Mot. to Dismiss Reply at 4 (arguing that "a taxpayer's filing of a frivolous Form 1040 tax return

appears to interfere with [the] RAIVS' ability to locate that return when responding to a

taxpayer's subsequent Form 4506 request" and therefore the "RAIVS' inability to promptly

locate and then send [the] [p]laintiffs' frivolous tax returns to them does not, and cannot, qualify

as outrageous conduct that would support the FOIA improper practice or policy claim" (internal

quotation marks omitted) (citing Keaton Decl. ¶ 28)).  Accordingly, because none of the bases

for imposing sanctions has been satisfied, the Court will deny the plaintiffs' motion for Rule 11

sanctions.

## IV.    CONCLUSION

For the foregoing reasons, the Court concludes that the all of the plaintiffs' claims

asserted in the Francis I and Francis II Complaints must be dismissed, and therefore grants the

defendants' first and second motions to dismiss in their entirety.  The Court also concludes that

the plaintiffs have identified no basis for imposing sanctions on the defendants, and therefore

denies the plaintiffs' motion for Rule 11 sanctions.

**SO ORDERED** this 12th day of June, 2020.[8]

REGGIE B. WALTON
United States District Judge

---

[8] The Court will contemporaneously issue an Order consistent with this Memorandum Opinion.